Juan Augustine **HERNANDEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–94–154–CR.

Court of Appeals of Texas,
Corpus Christi.

May 4, 1995.

Rehearing Overruled June 15, 1995.

Jesus Hernandez, Lloyd W. Willis, Edinburg, for appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Rene Guerra, Dist. & County Atty., Edinburg, for appellee.

Before DORSEY, CARL E.F. DALLY[1] and SMITH[2], JJ.

## OPINION

CARL E.F. DALLY, Justice (Assigned).

Appellant Juan Augustine Hernandez was convicted by a jury of one count of aggravated sexual assault; Act July 18, 1987, 70th Leg., 2nd C.S., ch. 16 § 1, 1987 Tex.Gen. Laws 80 (Tex.Penal Code Ann. § 22.021, since amended); and two counts of indecency with a child; Act May 29, 1987, 70th Leg., R.S., ch. 1028, § 1, 1987 Tex.Gen.Laws 3474 (Tex.Penal Code Ann. § 21.11, since amended). The trial court assessed punishment of confinement for forty years for aggravated sexual assault and twenty years for each count of indecency with a child. We are presented with two points of error, in which appellant asserts that the trial court erred by admitting before the jury an extraneous offense and by considering evidence of extraneous offenses which were included in a presentence investigation report. We will affirm the judgments.

Appellant lived with his wife and three step-children, thirteen year old Jorge, eleven year old Ricardo, and nine year old Iliana. The evidence shows that appellant on two or more occasions engaged in unlawful sexual contact with Jorge. His purpose, he told Jorge and Jorge's mother, was to teach Jorge how to masturbate. The evidence also shows appellant inserted his finger into Jorge's anus. Iliana testified that appellant placed his finger and his penis in her vagina. After appellant had engaged in this unlawful conduct and when Jorge and Ricardo were home alone, Elsa Reyna, a Child Protective Services Specialist, came to the home and visited with Jorge and Ricardo. She left for appellant one of the Child Protective Agency Pamphlets which explained the Child Protective Agency's services. She told the boys

that it was important that their father call her. Appellant did not call.

When appellant learned of Reyna's visit, he erroneously believed that Jorge had contacted the agency, so he punished Jorge. Appellant then told the family members, and got them to agree with him, that Jorge had been committing sexual improprieties with Ricardo and Iliana. Jorge in fear and without the support of the rest of the family accepted the appellant's scenario. Appellant then took his wife and three children to the City of Pharr Police Department and accused Jorge of improper sexual conduct with his sister and his younger brother.

Detective Javier Perez and Child Protective Services Specialist Reyna talked separately to members of the family. The children at first agreed that appellant's charges against Jorge were true. However, Reyna knew that her agency had received a report that appellant had committed a criminal offense against Iliana. After several hours of investigating and talking to the children, the children said it was the appellant who had committed the criminal acts to which they later testified at appellant's trial.

Appellant was charged with the offenses for which he was later tried. At the trial, under cross-examination the children and the investigating officers were interrogated thoroughly about the investigation and how the children had changed their stories during the investigation.

After the State's witnesses except Iliana had testified, the State offered the testimony of Veronica, the appellant's adult daughter by another marriage. Veronica only testified in the absence of the jury. She testified she had visited her father and his family at Thanksgiving time in 1992. This was several months before the charged offenses were alleged to have been committed. While she was visiting in the appellant's home, he called her and Iliana into a bedroom and told Veronica that Iliana wanted to show her something she was going to give appellant. Ap-

**1.** Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

**2.** Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

pellant asked Iliana "what she was going to give him and she said, 'panochita.' She reached down and touched herself and he kissed her hand, and then he touched her where she had touched herself ... Yes, in the vagina but she was fully dressed." Veronica testified further that when she was Iliana's age appellant had abused her and when she was older he had sexual intercourse with her. Appellant at that time accused Veronica with having sex with her older brother. She learned later that appellant knew her brother had had another girl in the house for sexual purposes. Appellant used the threat of exposure for these acts with the other girl to get Veronica's brother to say he had sex with Veronica. Veronica testified that at the time she did not think her mother would believe her so she suffered her father's unwanted sexual attention until she left home when she was seventeen. Several months after Veronica witnessed the Thanksgiving incident she became so concerned about Iliana that she called the Child Protective Services Agency and reported the incident. It was this report that prompted Reyna to visit the appellant's home and leave the pamphlet with a message for appellant to call her. After Veronica's testimony in the absence of the jury, the Court ruled that none of Veronica's testimony would be admitted before the jury in the State's case-in-chief. Since appellant did not offer evidence, Veronica's testimony was never heard by the jury.

Immediately after the Court ruled Veronica's testimony inadmissible, Iliana was called by the State to testify. Iliana testified concerning the charged offense. Then over objection she was allowed to testify about the extraneous offense that had occurred at Thanksgiving time in the presence of Veronica. Appellant's objection made prior to Iliana's testimony concerning the extraneous uncharged offense was:

> THE COURT: I assume you still have the basic argument about the evidence.
>
> [DEFENSE COUNSEL]: Yes, Your Honor. You do have to consider, I was going to say, I would ask you to consider the relevance and probative value.

> THE COURT: Anything else? Anything else Mr. [Defense Counsel] that you want to add to the record?
>
> [DEFENSE COUNSEL]: No, Your Honor. I assume you do understand that's what I'm basing it on.
>
> THE COURT: All right. Anything else now, Mr. [Prosecutor].
>
> [PROSECUTOR]: No, Your Honor.
>
> THE COURT: All right. The objection will be overruled. The testimony will be allowed.
>
> [DEFENSE COUNSEL]: Very well, Your Honor.
>
> THE COURT: Bring the child in.

The State concedes that appellant's objection was sufficient under Tex.R.Crim.Evid. 404(b) but asserts that it was not sufficient under Rule 403. See *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1990). We agree. Therefore, it is only necessary for us to determine whether the trial court correctly ruled that the extraneous offense evidence was relevant apart from its tendency to prove appellant's character and that he acted in conformity thereto. *Id.* at 388; *McFarland v. State*, 845 S.W.2d 824, 837 (Tex.Crim. App.1992). Evidence of other crimes or acts may be admissible for the purpose of showing motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Tex.R.Crim.Evid. 404(b).

The Court of Criminal Appeals recently held that when the only source of evidence of the extraneous misconduct is the complainant, that evidence of misconduct is not admissible to rehabilitate the impeached complainant. *Pavlacka v. State*, 892 S.W.2d 897, 902–03 (Tex.Crim.App.1994). In that case the State argued the extraneous offense was admissible to show motive. The majority of the Court, believing it was not timely raised, refused to consider whether the extraneous misconduct was admissible to prove motive. In *Pavlacka*, motive admissibility was urged and argued for the first time in the State's Petition for Discretionary Review. (see *Pavlacka*, footnote 5). In many jurisdictions where the issue has been considered under rules of evidence identical to or almost identical to our Rule 404(b), evidence of extraneous

misconduct has been admitted in cases such as this to show motive. The dissenting opinion in *Pavlacka* cites many of these cases including: *State v. Martin*, 242 Neb. 116, 493 N.W.2d 191, 194–96 (1992); *State v. Roman*, 622 A.2d 96, 98–99 (Me.1993); *State v. Tobin*, 602 A.2d 528, 531–32 (R.I.1992); *State v. Plymesser*, 172 Wis.2d 583, 493 N.W.2d 367, 372–73 (1992); *Brown v. State*, 817 P.2d 429, 433–34 (Wyo.1991).

Although, for procedural reasons, the majority in *Pavlacka*, did not decide whether evidence of the extraneous offense was admissible to prove motive, we believe the dissenting opinion correctly states the law as it should be applied in this case. We quote from *Pavlacka*.

It is a fundamental tenet of our criminal justice system that an accused may be tried only for the offense for which he is charged and not for being a criminal generally. *Owens v. State*, 827 S.W.2d 911, 914 (Tex.Crim.App.1992). Rule 404(b) incorporates this tenet by prohibiting the admission of uncharged misconduct evidence that shows nothing more than the accused's general propensity to commit criminal acts. *Id.* Thus, under Rule 404(b), uncharged misconduct evidence is admissible only if it helps prove something other than simple propensity to commit crimes. In other words, the admission of the uncharged misconduct evidence must be supported by a theory of relevance beyond propensity.

*Motive* is such a theory of relevance, and it is explicitly recognized in rule 404(b). The uncharged misconduct evidence presented at appellant's trial was admissible to prove his motive for the charged offense—that motive being his abnormal sexual desire for the complainant—regardless of whether the complainant's credibility was challenged. As we explained in *Brown v. State*, 657 S.W.2d 117, 118 (Tex.Crim.App. 1983) (quoting *Texas Law of Evidence*): The sexual passion or desire of X for Y is relevant to show the probability that X did an act realizing that desire. On the principle set out above, this desire at the time in question may be evidenced by proof of its existence at a prior or subsequent time.

Its existence at such other time may, of course, be shown by any conduct which is the natural expression of such desire.

No less an authority than Professor Wigmore agreed that uncharged sexual misconduct evidence is admissible to prove the motive of the defendant to commit the charged offense. Wigmore explained that "[t]he prior or subsequent existence of a sexual passion in A for B is relevant ... to show its existence at the time in issue." 2 Wigmore, *Evidence* § 398, at 445 (Chadbourn rev. 1979).

In prosecutions for sexual abuse of children by those in *loco parentis*, evidence of motive may be critical because it helps counteract jurors' "aversion to the notion that parents or others in *loco parentis* would actually commit sexual crimes against their own children." *Montgomery v. State*, 810 S.W.2d 372, 394 (Tex.Crim. App.1990).

■ *Pavlacka*, 892 S.W.2d at 904 (Campbell, J., dissenting). The State at the time of trial explicitly offered and argued that evidence of the extraneous offense was admissible under the provisions of Rule 404(b). The State in its brief on appeal argues that evidence of the extraneous offense was admissible to prove motive, plan, and opportunity. Furthermore, if the trial court's decision to admit evidence is correct on any theory of law applicable to the case it will be sustained. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990).

■ We hold that the complainant's testimony concerning the extraneous offense, which was also witnessed by Veronica, was admissible to prove motive. The trial judge correctly ruled that the extraneous offense evidence was relevant apart from its tendency to prove appellant's character and that he acted in conformity thereto. Appellant's first point of error is overruled.

We have had some difficulty in understanding appellant's second point of error. We will explain. The second point of error as first stated in appellant's brief is that:

The trial court erred in overruling appellant's objection to uncharged misconduct in the pre-sentence investigation, because

such material was not evidence and therefore denied appellant due process of law in the punishment phase.

In restating his second point of error, appellant made a substantial, substantive change when he changed its wording to read:

The trial court erred in overruling appellant's objection to uncharged misconduct in the pre-sentence investigation and without conducting an evidentiary hearing on punishment, because such procedure violated appellant's due process right.

At the time of trial appellant's objection was that:

[DEFENSE COUNSEL]: Your Honor, based on this, we would object to the PSI report on the basis that it contains information that is clearly beyond the scope of the PSI report; that is, allegations of misconduct, uncharged claims, clearly beyond the scope of 42.12 Section 9. Whereas these allegations or testimony may be admissible under a hearing, under Article 37.07 of the Code, Your Honor, they are certainly inadmissible in a PSI report, sir. We would move that the report be stricken.

Appellant argues in his brief supporting this point of error that he was not given notice of the extraneous offenses included in the pre-sentence report, that he was not allowed to confront and cross-examine witnesses to the extraneous offenses, and that he was not allowed to offer evidence concerning the extraneous offenses.

Appellant waived his right to have the jury assess punishment and the trial court had the duty to assess punishment. Tex.Code Crim.Proc.Ann. art. 37.07 § 2(b) (Vernon Supp.1994). After receiving the jury's verdict in each of the three counts, the court ordered a pre-sentence report and set a time for sentencing. Appellant and his counsel appeared and announced ready for the sentencing hearing. The trial court inquired whether defense counsel had seen the report and whether he had any objections to it. Counsel had seen the report and said he had an objection. Without being any more specific about his objection, counsel asked to call as a witness the probation officer who had prepared the report. After counsel questioned the officer and the State waived cross-examination, appellant's counsel made the trial objection which we have already noted. Appellant's complaint about notice is without merit. The extraneous offenses included in the pre-sentence report were the extraneous offenses which Veronica's testimony had revealed in the absence of the jury, at the time of trial several weeks before the sentencing hearing. Appellant had notice of these offenses. Appellant's complaint that he was not allowed to confront and cross-examine witnesses concerning the extraneous offenses included within the pre-sentence report is equally without merit. If he has such a right, in this instance during the trial of the case, defense counsel had opportunity to cross-examine and did cross-examine Veronica and Iliana concerning the extraneous offenses included in the pre-sentence report. Appellant's complaint that he was not allowed to offer evidence concerning the extraneous offenses included in the pre-sentence report has no merit. Appellant did call the probation officer as a witness. The record fails to show that appellant was denied the right to call any other witnesses.

The State offered no witnesses, did not cross-examine the probation officer, and merely argued that the court could properly consider the pre-sentence report. It was proper for the trial court to consider the pre-sentence report. See *Stancliff v. State*, 852 S.W.2d 630 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). Appellant has not shown he was deprived of due process or any other right at the punishment and sentencing hearing. Furthermore, appellant made no trial objection based on due process grounds and thus waived the error upon which he now relies on appeal. *Richardson v. State*, 823 S.W.2d 710, 716 (Tex.App.—San Antonio 1992, pet. ref'd.). Appellant's second point of error is overruled.

The judgment is affirmed.