Dan THOMAS, Appellant,

v.

Sherry BROWN, et. al., Appellees.

No. 14–95–00737–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 13, 1996.

---

Dan Thomas, Iowa Park, for appellant.

Ralph Longmire, Austin, David Halpern, Houston, for appellees.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

Dan Thomas, an inmate at the Texas Department of Criminal Justice, Institutional Division (TDCJ) appeals from a summary judgment granted in favor of Sherry Brown, Program Administrator for TDCJ's Access to the Courts program, on the ground that there were genuine issues of material fact. He also appeals from the dismissal of his claim against TDCJ on the grounds that his claim has an arguable basis in law. We affirm.

Proceeding *pro se* and *in forma pauperis,* appellant filed suit against Brown in both her individual and official capacities for both damages and injunctive relief. Appellant claimed that (1) a new legal materials policy implemented by Brown violated appellant's constitutional right of access to the courts and (2) Brown's implementation of the policy before the Texas Board of Criminal Justice (TBCJ) adopted it violated the holding in *Ruiz v. Estelle*[1] to the effect that only the TBCJ has discretion to alter legal materials policies. Appellant also asserted a claim against TDCJ under the Texas Tort Claims Act[2] (the "Act") alleging in effect that it was liable for Brown's negligent use of TDCJ office equipment to implement the new legal materials policy.

Brown filed a motion for summary judgment claiming that (a) appellant's claim that the policy was implemented without TBCJ approval was moot because TBCJ had subse-

---

1. *See* 503 F.Supp. 1265 (S.D.Tex.1980) *aff'd in part and vacated in part,* 679 F.2d 1115 (5th Cir.), *amended in part,* 688 F.2d 266 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

2. *See* TEX CIV.PRAC. & REM.CODE ANN §§ 101.001–101.109 (Vernon 1986 & Supp.1996).

quently adopted the policy,[3] (b) appellant could not show that he was deprived of his right of access to the courts or that he was harmed by the policy, and (c) Brown was immune from suit in both her official and individual capacities. Brown's summary judgment evidence explained how the policy works and why it was instituted. Appellant filed no summary judgment response or evidence.

TDCJ filed a motion to dismiss pursuant to Section 13.001 of the Texas Civil Practices and Remedies Code [4] on the basis that appellant's claim was frivolous in that it had no arguable basis in law or fact. In separate orders, the trial court granted both defendants' motions without stating the basis therefor.

In the first of his two points of error, appellant contends that the trial court erred in granting Brown's motion for summary judgment.

■ The movant for summary judgment has the burden to show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). To be entitled to summary judgment, a defendant must either (1) conclusively negate at least one essential element of each of the plaintiff's causes of action, or (2) conclusively establish each element of an affirmative defense to each claim. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex. 1995). In reviewing a summary judgment, the nonmovant's evidence is accepted as true, and every reasonable inference is indulged and all doubts are resolved in the nonmovant's favor. *Id.*

■ Appellant's suit against Brown is based on 42 U.S.C. § 1983, which provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (West 1994). The initial analysis in a Section 1983 action is to determine whether (1) the conduct complained of was committed by a *person* acting under color of state law; and (2) this conduct deprived a person of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).

■ As to the first element, when sued for damages, officials acting in their official capacities are not "persons" who may be liable under Section 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Therefore, appellant's Section 1983 action for damages against Brown in her official capacity was not actionable, and the trial court correctly granted summary judgment as to that claim. However, when sued for injunctive relief, officials acting in their official capacities are "persons" under Section 1983. *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. at 2311 at n. 10. This is so because these actions for prospective relief are not treated as actions against the State. *Id.* Thus, appellant's claim for injunctive relief against Brown in her official capacity is within Section 1983.

■ As to the second element, prisoners have a constitutional right of access to the courts that is adequate, effective and meaningful. *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977). This right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.,* 430 U.S. at 828, 97 S.Ct. at 1498. This right can be satisfied either through appointed counsel, access to a law library, or access to legally

---

3. Appellant has since conceded that this point became moot when TBCJ adopted the policy.

4. *See* TEX.CIV.PRAC. & REM.CODE ANN § 13.001 (Vernon Supp.1996).

trained paraprofessionals. *Id.,* 430 U.S. at 830–31, 97 S.Ct. at 1499–1500.

■ A prisoner contending that his right of access to the courts was violated because of inadequate access to a law library must establish two elements: (1) the access was so limited as to be unreasonable and (2) the inadequate access caused him actual injury. *Blaylock v. Painter,* 901 F.Supp. 233, 236 (W.D.Tex.1995) (citing *Vandelft v. Moses,* 31 F.3d 794, 797 (9th Cir.1994)); *see also Marange v. Fontenot,* 879 F.Supp. 679, 684 (E.D.Tex.1995).

■ With regard to whether access is so limited so as to be unreasonable, a prison regulation that impinges on an inmate's constitutional rights may nevertheless be valid if it is reasonably related to legitimate penological interests. *See Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *see also Henthorn v. Swinson,* 955 F.2d 351, 353 (5th Cir.) (applying the *Turner* test to an access to the courts claim), *cert. denied,* 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992). Several factors are relevant in determining the reasonableness of the regulation at issue. *Turner,* 482 U.S. at 89, 107 S.Ct. at 2262. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.,* 482 U.S. at 89–90, 107 S.Ct. at 2262. Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. *Id.,* 482 U.S. at 89–90, 107 S.Ct. at 2262. Moreover, the governmental objective must be a legitimate and neutral one. *Id.* A second factor is whether there are alternative means of exercising the right that remain open to prison inmates. *Id.* A third factor is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. *Id.* Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. *Id.* However, this is not a least restrictive means test. *Id.*

■ Appellant complains of the new legal materials policy that ended the practice of delivering actual law books to inmates who are not allowed to physically enter the law library because of their administrative segregation status.[5] The new procedure requires that TDCJ personnel instead provide these inmates photocopies of case law, Shepard's citations, statutes, and regulations without charge upon proper request.[6] However, administrative segregation inmates continue to have access to actual law books that are helpful in locating legal authorities, such as Texas Digest, Supreme Court Digest, United States Code Annotated, Vernon's Texas Statutes Annotated, and the like.[7] Because appellant challenges only the new procedure, we limit our discussion to the changes that were made in the legal materials policy.

Prior to the change, administrative segregation inmates could have up to five law books at a time delivered to their cells, six days per week. An inmate could keep the books for at least eight hours before the

---

5. According to Brown's motion for summary judgment, administrative segregation is a non-punitive custodial status for inmates who are generally identified as either assaultive or affiliated with a known gang, thus posing a continuing safety threat to themselves and others, as well as posing a continuing security risk to the penal institution. Security considerations are proper factors in determining the manner in which access to a library is provided. *See Eason v. Thaler,* 73 F.3d 1322, 1328 (5th Cir.1996) (noting that restrictions on direct access to legal materials may be warranted when prison security is involved); *Brooks v. Buscher,* 62 F.3d 176, 179 (7th Cir.1995) (noting that the Constitution requires meaningful access, not necessarily direct access, and that security reasons may justify the manner in which access is provided).

6. A proper request requires that an inmate reference a specific citation, including a volume number, volume name, page number, and/or case name. An example of a proper request for a copy of a case that was provided to the prisoners in a memo was as follows:

537 F.Supp. 766, *Cohen v. Martin's,* or
537 F.Supp., *Cohen v. Martin's*
537 F.Supp. 766.

An example of a proper request for Shepard's was: 537 F.Supp. 766. Additionally, if a prisoner cited a page number that was not the first page of the case, the policy requires that the entire case be copied for the prisoner.

7. The policy stated that all legal material, except that listed to be photocopied, would be available to prisoners, as under the old policy.

books had to be returned to the law library.[8] Under the new procedure, administrative segregation inmates continue to receive up to five requested items of legal research material per day, six days a week. The only difference is that instead of receiving the actual law book, inmates are now provided with photocopies of requested cases, statutes, and other legal materials.

Appellant complains that the new procedure will deprive him of his right to access to the courts when he does not know the specific cite to a book, that receiving copies of cases is not the same as receiving the actual books, and that the new procedure will hinder his ability to read advance sheets to keep current of changes in the law. However, he has not indicated *how* this would occur. On the other hand, Brown's uncontroverted summary judgment evidence indicated that Brown instituted the new policy after the TDCJ conducted a survey of law book use by inmates within its maximum security units. This survey indicated that as many as sixty percent of all law books requested by and delivered to maximum security inmates were being used for improper purposes, including use as weights for weight lifting and use as end tables or stools by stacking the books on top of each other. Additionally, the survey showed that tens of thousands of dollars, as well as hundreds of man-hours, are expended annually in the replacement and/or repair of law books damaged through this misuse or abuse by inmates.

The change in procedure thus increases accessibility to the law library's limited resources by increasing the amount of time that law books are available in the library both for the general prison population and for copying for administrative segregation inmates. This evidence establishes that, under the new policy, appellant and other administrative segregation inmates will have the same or greater access to legal resources and materials than under the old policy, and that the policy is reasonably related to legitimate penological interests. Having concluded that appellant's constitutional right to access to the courts was not impinged by the new policy as a matter of law, we overrule appellant's first point of error.

In his second point of error, appellant argues that the court erred by granting TDCJ's motion to dismiss.

A court in which an affidavit of inability to pay under Rule 145 of the Texas Rules of Civil Procedure has been filed may dismiss the action if the action is frivolous. TEX.CIV.PRAC. & REM.CODE ANN. § 13.001(a) (Vernon Supp.1996). In making that determination, the court may consider whether the claim has an arguable basis in law or in fact. *Id.* § 13.001(b). However, where, as here, no hearing on the factual issues has been held, the trial court may dismiss the action only when there is no basis in law for the suit. *See Moore v. Collins*, 897 S.W.2d 496, 499 (Tex.App.—Houston [1st Dist.] 1995, no writ).

Under the doctrine of sovereign immunity, the State is not liable for the negligence of its employees absent a constitutional or statutory provision for liability. *University of Texas Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994). Section 101.021 of the Act sets out the waiver of immunity.[9]

Relying on Section 101.021(2) of the Act, appellant claims that Brown's use of equipment and supplies, *i.e.*, tangible personal property, in writing and distributing the new legal materials policy caused him personal injury.

---

8. The record does not indicate the maximum time a book could be kept.

9. Section 101.021 of the Act provides that a governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986).

Tangible personal property refers to something that has a corporeal, concrete, and palpable existence. *York,* 871 S.W.2d at 178. It is well established that information and pronouncements, even when reduced to writing, are not tangible personal property for purposes of the Act.[10] Thus, the new policy was not itself tangible personal property. Nor is the use of computers and other equipment to collect, record or communicate such information a use of tangible personal property under the Act. *See Dear v. City of Irving,* 902 S.W.2d 731, 737 (Tex.App.–Austin 1995, writ denied). Therefore, the use of office equipment in this case to implement the new legal materials policy was not a use of tangible personal property which is actionable under the Act. In the absence of a use of tangible personal property, and thus a basis in law for appellants suit, the trial court properly granted TDCJ's motion to dismiss. Accordingly, we overrule appellant's second point of error and affirm the judgment of the trial court.

---

10. *See Dallas County v. Harper,* 913 S.W.2d 207, 207–08 (Tex.1995) (holding that indictment is no more than a grand jury's pronouncement reduced to writing and not tangible personal property under the Act); *Kassen v. Hatley,* 887 S.W.2d 4, 14 (Tex.1994) (holding that hospital medical records, patient file and emergency room procedures manual were not tangible personal property under the Act); *University of Texas Med. Branch v. York,* 871 S.W.2d 175, 179 (Tex.1994) (holding that information which may or may not be recorded in medical records is not tangible personal property under the Act).