TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00751-CR






Guadalupe DeLeon, (1) Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO.50,848, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING







 Appellant Guadalupe DeLeon appeals his conviction for indecency with a child by
contact. See Tex. Pen. Code Ann. § 21.11(a)(1) (West Supp. 2001). (2) The jury found appellant guilty
and assessed his punishment at twenty years' imprisonment and a $10,000 fine.


Point of Error


 Appellant advances one point of error contending that the trial court erred in
admitting into evidence unadjudicated third party extraneous offenses at the guilt-innocence stage
of the trial. See Tex. R. Evid. 404(b), 403.

 It is a fundamental tenet of our system of jurisprudence that an accused must only be
tried for the offense of which he is charged and not for being a criminal generally. Owens v. State,
827 S.W.2d 911, 914 (Tex. Crim. App. 1992); Templin v. State, 711 S.W.2d 30, 32 (Tex. Crim. App.
1986). Appellant vigorously contends that the trial court, by its evidentiary rulings over timely,
repeated, and running objections, deprived him of a fair determination of his guilt of the alleged
offense in direct violation of this basic rule. Appellant points out that the bulk of the State's case-in-chief at the guilt-innocence stage of the trial was composed of unadjudicated third party extraneous
offenses, mostly remote, having occurred seventeen to twenty-three years prior to trial; that four of
the five State's witnesses testified as to extraneous offenses and only the complainant testified as to
the alleged offense. Appellant in effect argues that the third party extraneous offenses were
improperly admitted for inapplicable and ever-changing purposes and exceptions to the prohibited
character conformity evidence rule. Appellant further urges that the probative value, if any, of the
third party extraneous offenses was substantially outweighed by unfair prejudice and confusion of
issues, and that the trial court erred in overruling his Rule 403 objection. Tex. R. Evid. 403. 
Appellant claims that the trial court's error or errors affected his substantial rights, influenced the
jury and resulted in harm. Tex. R. App. P. 44.2(b).

 The State contends that the trial court did not abuse its discretion in admitting the
extraneous offense evidence, not in rebuttal but immediately after the complainant's testimony; that
the testimony of appellant's stepdaughters, three of whom were from previous marriages/
relationships, were relevant and of probative value and admissible. Tex. R. Evid. 403, 404(b). The
State urges that the evidence was admissible for the purposes stated in the trial court's oral and
written limiting instructions and particularly to rebut the defensive theory of fabrication, which it
argues was raised by the jury voir dire examination, defense counsel's opening statement, and the
cross-examination of the complainant. We will reverse the conviction and remand the cause.


Indictment


 The indictment alleged in pertinent part that appellant in Bell County on or about May
5, 1999:


DID THEN AND THERE WITH THE INTENT TO AROUSE AND GRATIFY
THE SEXUAL DESIRE OF THE SAID GUADALUPE DELEON ENGAGE IN
SEXUAL CONTACT WITH L.L., A CHILD YOUNGER THAN 17 YEARS OF
AGE AND NOT THE SPOUSE OF THE SAID GUADALUPE DELEON, BY
THEN AND THERE TOUCHING THE BREAST OF THE SAID L.L.



 The elements of the offense charged are (1) appellant, a person, (2) with intent to
arouse and gratify his sexual desire, (3) engaged in sexual contact with L.L., (4) by touching the
breast of L.L., (5) a child younger than 17 years of age, and (6) not his spouse. These were the
elements the State was required to prove beyond a reasonable doubt. Tex. Pen. Code Ann. § 2.01
(West 1994).


Background


 The sufficiency of the evidence is not challenged. A recitation of the facts is essential 
to place the sole contention in proper perspective.

 L.L., the fourteen-year-old complainant, testified at the October 2-4, 2000 trial that
her birth date was October 31, 1985. Her mother, Donna DeLeon, had been married to appellant for
several years. The record reflects that L.L., her mother, and appellant lived in a mobile home on the
Wilson farm in Bell County where appellant was the foreman. L.L. testified that sometime in the
summer of 1998 (3) she had been swimming at the Wilson swimming pool when appellant asked her
if she would like to go with him to feed the cows, and she agreed; that appellant stopped his truck
at a tank or "pond" and asked her if she wanted to go "skinny-dipping"; that when she declined,
appellant pulled down both pieces of her bathing suit; that she pulled the pieces up and got out of
the truck; that she began walking home; that appellant drove his truck up and told her that he was
sorry. Because she did not think he "meant it" when he pulled her bathing suit down, she got back
into the truck. Her mother was at work at the time.

 L.L. testified that approximately a year later, in the summer of 1999, another incident
occurred. She placed the time about one or two months before she gave her statement to the Child
Advocacy Center on July 8, 1999. L.L. related that about 10:45 p.m. on the occasion in question her
mother was at work as a waitress; that she was lying on a bed with appellant watching a movie on
television; that she thought appellant was about to fall asleep when he grabbed and squeezed her
stomach and would not let her get up; that she was dressed in a shirt and shorts, and appellant put
his hand under her shirt and under her bra and touched her breast. At this time, the telephone rang
and appellant turned to answer it. L.L. stated that she was able to get away and ran out of the house
to the end of the driveway; that she then retreated to the garage where appellant found her; that
appellant told her he had taken two Nyquil sleeping pills instead of one and "that's what made him
do that"; and that it was her fault just as much as it was his.

 L.L. testified that thereafter she got in the truck with appellant and they drove towards
her mother's place of work, but turned around when her mother passed on her way home. L.L.
revealed that she did not tell her mother what happened because the next day appellant threatened
to kill her and throw her in a ditch if she did. She was also afraid that her mother would confront
appellant in her presence and appellant would do something to her when her mother was not at
home; that she knew her mother loved appellant and she did not want to be the one to break up that
relationship; that her biological father had a "bad temper" and she did not want him to "do
something."

 Two days after the incident, L.L. caught appellant watching her while she was in the
shower. L.L. then telephoned Stephanie Tipton, her biological father's fiancèe, whom L.L. referred
to as her "stepmom." Tipton came and picked up L.L. Later, L.L., her sister, Lindey, and Tipton
went together to the Children's Advocacy Center.

 L.L. revealed that after the first incident in 1998 she informed Lindey, who lived in
Waco, Tipton, and her Aunt Lisa what had happened, and Tipton had later told her father, Gary. The
police were never called. L.L. testified that after the 1999 incident she had been living with her
father and Tipton. She had not lived again with her mother and appellant. She insisted that her
relationship with her mother was good.

 On direct examination, the State also elicited from L.L. a denial that she was "making
up" stories about appellant in order that her father and mother would "get back together," and a
denial that every time she had an argument with her mother and got "mad" she would be "out to get
him (appellant)." Upon further prosecutorial interrogation, L.L. admitted that she had told lies, even
a "few whoppers," and that she had lied to her mother, her father, and Tipton. L.L. insisted that she
was telling the truth to the jury.

 On cross-examination, appellant briefly retraced the facts surrounding the extraneous
incident in 1998 when L.L. testified that appellant had pulled down her bathing suit. He established
that on one occasion that spring or summer, L.L. had not been permitted because of her school
grades to go with her mother and appellant to the Frontier Bar where karaoke music was played; that
she had an argument with her mother about the denial; and that while they were gone she left a note:
"Gone to Dad's." L.L. stayed with her biological father and Tipton until some time in October 1998
when she returned to live with her mother and appellant on the Wilson farm.

 Appellant then sought to establish that in the spring or summer of 1999, L.L. got into
an argument with her mother over the telephone after L.L. failed to get up that morning and drive
a tractor to help appellant haul hay. L.L. could not remember any such incident or argument with
her mother.

 At the conclusion of L.L.'s testimony, the State had established the ultimate facts of
the charged offense along with the extraneous acts or offenses of the 1998 bathing suit incident, the
threat to kill, and the shower episode. The State then offered the unadjudicated third party
extraneous offense evidence in its case-in-chief from four witnesses. These included L.L.'s sister,
Lindey, and three former stepdaughters of appellant's from previous marriages or relationships as
to sexual acts he committed on them. This testimony was admitted over Rules 404(b) and 403
objections repeatedly made and running objections obtained. Claims of remoteness were also
advanced. 

 Debra Selio, age thirty-four, testified that appellant married her mother, Oralia
Calderone, when she (Debra) was a baby. She related that when she was eleven years old, appellant
fondled her breasts when her mother was at work; that from age eleven to fourteen years, appellant
had sexual intercourse with her once or twice a week until he left to live with Rebecca Vasquez; that
she would ask him to stop and he would say that he was sorry, but he continued the practice; and that
she did not tell anyone because she was a stepchild and she did not think that she would be believed. 
Her testimony placed the acts as occurring in the late 1970s and in 1980, some twenty to twenty-three years prior to trial.

 Monica Haudek, age thirty-four, daughter of Rebecca Vasquez, testified that in
March 1982 and February 1985 appellant had pinned her down once on the floor and once in a bed,
but she had gotten him to stop or escaped his grasp. However, she related that in August 1983, when
she came out of the bathroom after having been swimming, appellant pushed her into a bed, told her
to "shut up," placed his hand over her mouth and threatened to kill her, asked if she was a virgin, and
fondled her breasts. Appellant got up when he apparently heard "something." He told Monica that
he was sorry and offered to get her a Tylenol pill. Appellant stated that if Monica told her mother
she would not be believed. As appellant left the room, Monica's sister, Laurinda, came in. At this
point, Monica related that her cousin, Emilio, arrived, asked her to babysit with his child, and she
left the house. Monica did not tell anyone except her sister what occurred because when Laurinda
had earlier reported a similar sexual assault, their mother had not believed her.

 Laurinda Paine, sister of Monica, testified that on the occasion in August 1983 when
she was twelve years old, and after Monica left to babysit, appellant raped her twice. Later, she ran
away from home and an officer brought her back. When she explained to her family that she had
run away because her stepdad had taken her virginity, appellant cried and admitted what he had done. 
Appellant never touched Laurinda again.

 L.L.'s sister, Lindey, age eighteen, testified that she lived with her mother, Donna,
and appellant after they married; that sometime in 1998 appellant called her into her mother's
bedroom, threw her on the bed, got on top of her, and fondled her breasts. Appellant got off when
Lindey threatened to tell her mother if he did not stop. Appellant explained that he had been
smoking "weed" laced "with something." Appellant threatened her if she told her mother, but she
could not remember the threat. Lindey did not report the incident because she did not think appellant
would do it again. Shortly thereafter, Lindey moved to Waco to live with her boyfriend and his
parents.

 When the State rested, appellant called Johnnie Pace Wilson for whom appellant had
worked on a farm. Wilson thought it was sometime in May 1999 that appellant came to her house
one morning to tell her what he planned to do that day and ask if there were any special instructions. 
This was a common occurrence, but on this morning appellant told her that he and a hired neighbor
boy would be hauling hay; that L.L. was to drive the tractor, which she loved to do, but she would
not wake up. Wilson revealed that later in the morning L.L. came to her house asking where
appellant was because she wanted appellant to take her to town. Wilson pointed out that appellant
and the neighbor boy were at the back of the barn where the hay had been stacked. L.L., however,
left and returned to the mobile home. Later, L.L. returned and asked Wilson to take her to town. 
Wilson declined. L.L. again asked for appellant and was told that he was somewhere out in the
pasture. Wilson and L.L. had a conversation. Wilson learned L.L. had telephoned her mother at
work. While L.L. did not appear upset, she was "mad" at her mother because her mother "hung up." 
Wilson stated that her conversation with L.L. did not involve any mention of sexual contact or
matters. Later, Wilson saw L.L.'s father's pickup at the mobile home. Wilson believed that was the
last day L.L. stayed on the farm.

 Donna DeLeon, L.L.'s mother, testified that she married appellant in March 1998 and
moved with L.L. into the mobile home on the Wilson farm. In May 1998, L.L. was permitted to go
to Sea World with friends, the Taylors. When they returned, appellant picked L.L. up, but told L.L.
to change clothes because she was skimpily dressed. On the way home, L.L. called appellant a
"S.O.B." When Donna arrived home, L.L. began "back talking" to her. L.L. was informed that she
could not go that night to the Frontier Bar with her mother and appellant and reminded L.L. that she
had already been grounded because of her school grades. When Donna and appellant arrived home,
they found a note that L.L. had gone to her father's house. Donna went there, an argument ensued,
and her arm was broken by L.L.'s father. Appellant took her to the hospital when she came home. 
Donna placed the date as May 24, 1998. There was no mention at the time of any sexual contact
between appellant and L.L.

 In June 1998, Donna talked to her other daughter, Lindey, and then L.L. confirmed
there had been sexual misconduct by appellant (the bathing suit incident). Donna stated that L.L.
did not act differently and continued to visit on weekends. Donna had her doubts about the story she
had been told. Later, Donna talked with L.L.'s father who had overheard "a conversation."
Thereafter, Donna did not believe any sexual contact had occurred between appellant and L.L. In
October 1998, L.L. moved back to the mobile home with Donna and appellant. The move was L.L.'s
idea as well as her father's. According to Donna, L.L. continued to live there until July 1999 when
the hauling hay incident occurred and Donna and L.L. got into an argument.

 Donna related that about six weeks before the trial, L.L. called her twice from a
friend's house in the early morning hours. L.L. had had an argument with her father. It was Donna's
understanding that L.L. wanted to come stay with Donna and appellant, but Donna could not permit
that under the circumstances.

 On cross-examination, Donna related that L.L. had told her about the 1998 bathing
suit incident but she did not report the matter to authorities because she thought L.L. was "making
it up" because L.L. was "mad." Further, the prosecutor elicited that Donna felt that both her
daughters were lying. After Donna's testimony, appellant rested his case at the guilt-innocence stage
of the trial.


Discussion


 With this background, we examine appellant's contention on appeal. Evidence is
relevant if it has "any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be without the evidence." 
Tex. R. Evid. 401; Johnson v. State, 932 S.W.2d 296, 300 (Tex. App.--Austin 1996, pet. ref'd). All
relevant evidence is admissible except as otherwise provided by constitutions, statutes, or rules. Tex.
R. Evid. 402; Corley v. State, 987 S.W.2d 615, 618 (Tex. App.--Austin 1999, no pet.). "Questions
of relevance should be left largely to the trial court, relying on its own observations and experience,
and will not be reversed absent an abuse of discretion." Moreno v. State, 858 S.W.2d 453, 463 (Tex.
Crim. App. 1993). Although relevant, evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the
jury, or by consideration of undue delay, or needless presentation of cumulative evidence. Tex. R.
Evid. 403. We review a trial court's analysis of the probative value of an extraneous offense under
an abuse of discretion standard. See Johnson, 932 S.W.2d at 302.

 Rule 404(b) provides:


Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs or acts is not
admissible to prove the character of a person in order to show action in conformity
therewith. It may, however, be admissible for other purposes, such as proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident, provided that upon timely request by the accused in a criminal
case, reasonable notice is given in advance of trial of intent to introduce in the State's
case-in-chief such evidence other than that arising in the same transaction.



Tex. R. Evid. 404(b).

 This rule and Rule 404(a) embody the traditional Texas rule that has approved the
general principle "that an accused person is entitled to be tried on the accusation made in the State's
pleadings and not on some collateral crime, or for being a criminal generally." Cantrell v. State, 731
S.W.2d 84, 88 (Tex. Crim. App. 1987). This is because such evidence is inherently prejudicial and
the defendant's alleged " propensity to commit crimes" is not material to whether he is guilty of the
specified conduct which is charged. Elkins v. State, 647 S.W.2d 663, 665 (Tex. Crim. App. 1983);
see also 1 Steven Goode, et al., Texas Practice: Guide to the Texas Rules of Evidence: Civil and
Criminal § 404.6.1 (2d ed. 1993); Mayes v. State, 816 S.W.2d 79, 86 (Tex. Crim. App. 1990) (noting
that evidence of a defendant's bad character traits possesses such a devastating impact on a jury's
rational disposition towards other evidence, and is such poor evidence of guilt, that an independent
mandatory rule was created for its exclusion).

 The general rule is subject to the listed exceptions in Rule 404(b), but these
exceptions and others drawn from case law are not exclusive or exhaustive. Goode, § 404.6.1;
Pondexter v. State, 942 S.W.2d 577, 583-84 (Tex. Crim. App. 1996); Cantrell, 731 S.W.2d at 89. 
Extraneous offense evidence is admissible to rebut defensive theories. Ransom v. State, 920 S.W.2d
288, 301 (Tex. Crim. App. 1994). The same is true of extraneous criminal acts showing
"consciousness of guilt," id. at 299, and to show physical capacity to commit a crime, Mendiola v.
State, 995 S.W.2d 175, 177-82 (Tex. App.--San Antonio 1999), rev'd on other grounds, 21 S.W.3d
282 (Tex. Crim. App. 2000). Notwithstanding Rule 404's inclusion of the general rule, certain
extraneous offense evidence is admissible in designated sexual offense cases where a child is the
victim of the offense. See Tex. Code Crim. Proc. Ann. art. 38.37 (West Supp. 2001).

 The State's only witness as to the alleged offense was the fourteen-year-old
complainant. (4) There was no outcry witness, and no law enforcement officer, social worker, or child
abuse expert witness was called to testify. The bulk of the State's case-in-chief was the testimony
of the other four witnesses as to the details of the unadjudicated third party extraneous offenses
which was offered immediately after the complainant's testimony. Extraneous offense evidence is
not admissible merely to bolster the testimony of the complainant. See Owens, 827 S.W.2d at 916.

 Actually, there were extraneous offenses elicited by the prosecution during L.L.'s
testimony. These were not of the third party variety but extraneous matters between L.L. and
appellant. The State on direct examination of L.L. began by eliciting the 1998 extraneous act of the
bathing suit incident before offering any evidence of the 1999 offense charged in the indictment. 
There was no objection to this evidence apparently because it was admissible under article 38.37. 
Tex. Code Crim. Ann. art. 38.37 (West Supp. 2001). (5) In addition to the 1998 extraneous act, L.L.
testified that the day after the charged offense occurred in 1999, appellant threatened to kill her and
throw her in a ditch if she told her mother. There was no objection to this extraneous offense for it
would appear to be admissible under article 38.37 and as an act revealing a "consciousness of guilt." 
See Ransom, 920 S.W.2d at 299. Moreover, the complainant also testified without objection that
two days after the charged offense occurred she discovered appellant watching her shower. These
extraneous acts or offenses were before the jury before any attempt was made to introduce the third
party extraneous offense evidence.

 When appellant advanced his Rules 404(a) and 403 objections to the admission of
the third party extraneous offense evidence, there was a hearing in the absence of the jury. As the
proponent of the evidence, the prosecutor advanced the purposes of intent, common plan, scheme,
motive, design, lack of mistake, and to rebut the defensive theory of fabrication. With regard to the
latter theory, the prosecutor relied in part on voir dire examination by appellant, and the opening
statement to the jury by defense counsel to the effect that the evidence "would show" that when the
complainant had arguments with her mother, got "mad" and left home, it was then that she claimed
"these things took place." Appellant argued that the opening statement did not open the door to the
admission of third party extraneous offense evidence.

 The trial court announced that it had reviewed the State's notice of intention to use
extraneous offenses pursuant to Rule 404(b), considered the voir dire examination, appellant's
opening statement to the jury and the testimony of the complainant, and overruled appellant's Rule
404(b) objection "based on the evidence." (6)

 In clarification, the trial court ruled that the third party extraneous offense evidence
was relevant and being admitted for the purposes of plan, scheme, motive, identity "and all issues
argued by the State." Appellant's Rule 403 objection was overruled. Appellant was given a running
objection to all of the extraneous offense evidence.

 At the conclusion of each extraneous offense witness's testimony, the trial court
orally instructed the jury that it could consider that testimony only in determining motive,
opportunity, plan, knowledge, identity or absence of mistake or accident. See Tex. R. Evid. 105(a). 
Rebuttal of a defensive theory was not mentioned. The purposes for which the complained-of
testimony could be used was later broadened. The written jury instructions told the jury the third
party extraneous offense evidence could only be considered for the purposes of showing motive,
intent, design, plan, common scheme, knowledge, lack of mistake or accident, impeachment, rebuttal
of a defensive theory, and opportunity. The nature of the defensive theory remained unidentified in
the jury instructions.

 When a defendant objects on the ground that evidence is not relevant, violates Rule
404(b), or constitutes an extraneous offense, the State must show that the evidence has relevance
apart from showing character conformity. Rankin v. State, 974 S.W.2d 707, 718 (Tex. Crim. App.
1996). The "mere fact that a party introduces [offers] evidences for a purpose other than character
conformity, or any of the other enumerated purposes in Rule 404(b), does not, in itself, make the
evidence admissible." Id. at 719. Extraneous offense evidence will generally be relevant but the
permissible purposes for which the State is offering it may not be. Id. We shall examine the
purposes for which the extraneous offense evidence here was offered.


Intent


 Under the indictment, the State was required to establish that the sexual contact was
committed by appellant with the intent to arouse and gratify his sexual desire. Intent can be inferred
from acts, words, and conduct of the accused. Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim.
App. 1991); Dues v. State, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982). The requisite guilty intent
could certainly be inferred by the jury from the complainant's testimony about how in 1999 appellant
touched her breast as alleged as well as from the surrounding circumstances. See Johnson, 932
S.W.2d at 303; Zuliani v. State, 903 S.W.2d 812, 827 (Tex. App.--Austin 1995, pet. ref'd). The
testimony on direct examination of the complainant about the extraneous 1998 bathing suit incident
could also form a basis for the inference of the required intent. In addition, the complainant testified
that appellant threatened to kill her if she told what happened, and that later she observed appellant
watching her shower. "Where the State's direct evidence . . . clearly shows the intent element of the
crime and that evidence is uncontradicted by the defendant or not undermined by cross-examination
of the State's witnesses, the offer of other crimes is unjustified due to the lack of relevancy." Rankin
v. State, 974 S.W.2d 707, 719 (Tex. Crim. App. 1996) (op. on reh'g). The State may not introduce
extraneous offenses as circumstantial evidence of an element in its case-in-chief if that element can
readily be inferred from other uncontested evidence. Clark v. State, 726 S.W.2d 120, 122 (Tex.
Crim. App. 1986).


Identity


 Identity was never an issue in the case sub judice. The State proved identity by the
complainant's direct and positive identification of appellant, her stepfather. The issue of identity was
not raised on cross-examination. The extraneous offenses were not admissible on the issue of
identity. See Elkins v. State, 647 S.W.2d 663, 666 (Tex. Crim. App. 1988). Moreover, "system" is
not a purpose for admitting extraneous offense evidence when identity is not an issue. Owens, 827
S.W.2d at 916.

Motive


 Motive, like intent and identity, is a recognized exception set forth in Rule 404(b). 
Motive is not an essential element of a criminal case and need not be proved to sustain the
commission of the offense. Bush v. State, 628 S.W.2d 441, 444 (Tex. Crim. App. 1982); Zuliani,
903 S.W.2d at 826-27. The admissibility of extraneous offense evidence is usually required to relate
or pertain to other acts by the accused against the complainant in the offense for which the accused
is presently being tried. Foy v. State, 593 S.W.2d 707, 708-09 (Tex. Crim. App. 1980); Kiser v.
State, 893 S.W.2d 277, 282 (Tex. App.--Houston [1st Dist.] 1995, pet. ref'd); Massey v. State, 826
S.W.2d 655, 658 (Tex. App.--Waco 1992, no pet.). In light of the evidence properly admitted, the
admission of the third party extraneous offenses, most of them being remote, had no bearing on the
undisputed issue of motive.


Accident or Mistake


 A claim that the alleged act was done by accident or mistake is a defensive issue
which must be raised. Evidence tending to show that an alleged touching was not accidental or a
mistake would not be relevant if the defendant has yet to make a claim of accident or mistake. 
Rankin, 974 S.W.2d at 719; Prior v. State, 647 S.W.2d 956, 959 (Tex. Crim. App. 1983). Using
accident or mistake as the basis for the introduction of extraneous offenses may be pointless if the
defendant has not claimed accident or mistake. Prior, 647 S.W.2d at 959. In the instant case,
appellant denied the alleged offense by his plea of not guilty, and never raised a claim that the
alleged touching was by accident or mistake. (7) In using accident and mistake as a purpose for
admitting the extraneous offenses when they were not relevant was error on the part of the trial court
which could have served only to confuse the jury.

Impeachment


 Impeachment means "to discredit the veracity of a witness." Black's Law Dictionary 
755 (7th ed. 1999); see also Moreno v. State, 944 S.W.2d 685, 689 (Tex. App.--Houston [14th
Dist.] 1997), aff'd, 22 S.W.3d 482 (Tex. Crim. App. 1999); Lopez v. State, 643 S.W.2d 431, 435
(Tex. App.--Corpus Christi 1982, no pet.). Impeachment is not among the listed exceptions in Rule
404(b). Testimony admitted for impeachment purposes only is without probative value and cannot
be considered as substantial evidence. Adams v. State, 862 S.W.2d 139, 147 (Tex. App.--San
Antonio 1993, pet. ref'd). It should be so limited in the court's charge. Id. at 148.

 Appellant did not impeach the complainant's testimony. If it be argued that the
extraneous offense evidence was necessary to rehabilitate the complainant, it is observed that
testimony about an extraneous offense involving another person does not rehabilitate the
complainant. Webb v. State, 36 S.W.2d 164, 181 n.9 (Tex. App.--Houston [14th Dist.] 2000, pet.
ref'd); Hernandez v. State, 900 S.W.2d 835, 837 (Tex. App.--Corpus Christi 1995, no pet.)


Rebuttal of a Defensive Theory


 Extraneous offense evidence is admissible to rebut a defensive theory raised. 
Ransom, 920 S.W.2d at 301; Crank v. State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1998); Castillo
v. State, 865 S.W.2d 89, 92 (Tex. App.--Corpus Christi 1993, no pet.). However, offering evidence
for a purpose other than character conformity or any listed exception in Rule 404(a) does not by itself
make the evidence admissible. Rankin, 974 S.W.2d at 709. The extraneous offense must also be
relevant to a "fact of consequence in the case." Id.

 An issue may become contested as a result of impugning cross-examination
authorizing extraneous offense evidence. See Robinson v. State, 701S.W.2d 895, 899 (Tex. Crim.
App. 1985). Appellant did cross-examine the complainant. The exercise of the right of cross-examination will not, in and of itself, open the door to the admission of extraneous offenses. 
Caldwell v. State, 477 S.W.2d 877, 879 (Tex. Crim. App. 1979). Rather, it is the response elicited
from a State's witness on cross-examination which may allow the prosecution to subsequently
introduce an extraneous offense. Crank v. State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988);
Walker v. State, 588 S.W.2d 920, 922 (Tex. Crim. App. 1979) (involving the manner of cross-examination). The cross-examination must seriously weaken the State's testimony. See Albrecht
v. State, 486 S.W.2d 97, 102 (Tex. Crim. App. 1972); Crank, 761 S.W.2d at 341. The cross-examination must effectively contest a fact that testimony was offered to prove. Clark, 726 S.W.2d
at 122. The manner of cross-examination was neither vigorous or impugning. No defensive theory
was raised thereby.

 Appellant did imply in his opening statement that the defense would show that when
the complainant "claims these things took place" there was always an argument with her mother. 
It is this opening statement that the State contends laid the basis for the defensive theory of
fabrication.

 Appellant did establish that in 1998 the complainant got "mad" at her mother for not
being allowed to go to the Frontier Bar and moved to her father's house that very night. But, other
than being in the same summer, this matter was never tied to the 1998 extraneous bathing suit
incident. No nexus was established. Appellant attempted to prove that the complainant got "mad"
at her mother in 1999 in dispute over the complainant's failure to drive a tractor to haul hay. The
complainant, however, had no recollection of any such incident.

 It was the State, not appellant, who established that the complainant told lies, some
"whoppers," but was now telling the jury the truth. The State may not by "prompting or
maneuvering" set up a defensive theory which it may then rebut through the use of extraneous
offense evidence. See Shipman v. State, 604 S.W.2d 182, 185 (Tex. Crim. App. 1980); Mendiola,
995 S.W.2d at 178; Mares v. State, 758 S.W.2d 932, 936 (Tex. App.--El Paso 1988, pet. ref'd); cf.
Hammett v. State, 713 S.W.2d 102, 105 n.4 (Tex. Crim. App. 1986); Wheeler v. State, 988 S.W.2d
363, 367 (Tex. App.--Beaumont 1999, no pet.).

 When the State offered the extraneous offenses to rebut the alleged defensive theory
of fabrication, that defense had not been raised. The voir dire examination and the opening
statement to the jury did not constitute evidence. The defensive issue was not raised by the cross-examination of the complainant, and appellant had not yet had an opportunity to present his
evidence. The trial court erred in admitting the extraneous offense evidence on this basis.

 It is true that when extraneous offenses are improperly admitted in the State's case-in-chief, subsequently admitted evidence can render the premature admission harmless. Siguerios v.
State, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985); Silva v. State, 831 S.W.2d 819, 821-22 (Tex.
App.--Corpus Christi 1992, no pet.); Michel v. State, 745 S.W.2d 497, 498 (Tex. App.--Corpus
Christi 1988, pet. ref'd). After the admission of the extraneous offenses, appellant did call Donna
DeLeon, the complainant's mother, and Johnnie Pace Wilson. These witnesses established that L.L.
had an argument with her mother about the hay-hauling incident in 1999. Wilson placed the time
in May and the mother placed it in July 1999. The argument was never tied to the alleged offenses. 
Appellant did not raise a defensive theory of fabrication by such subsequent testimony. The State
did elicit from Donna DeLeon on cross-examination that she thought L.L. and her sister were both
lying and made use of this in jury argument. Here again, the State may not prompt or maneuver to
set up a defensive theory it may then rebut by use of extraneous offenses. Shipman, 604 S.W.2d at
185. The subsequently introduced evidence did not render the extraneous offense evidence
admissible.


Other Purposes


 We have examined the other purposes for which the trial court admitted the mostly
remote unadjudicated third party extraneous offense evidence including opportunity, knowledge,
design, plan and common scheme. We find that these purposes were not material issues in the case
having no relevance beyond demonstrating that appellant was a criminal generally. Further, the State
has not briefed or adequately shown that these exceptions or purposes were involved.

 Because the trial court failed to identify any legitimate reason for allowing the third
party extraneous offense evidence and our independent review of the record reveals none, we find
it an abuse of discretion for the trial court to have admitted the evidence.

 Even if it could be validly argued that for some reason the third party extraneous
offense evidence had a relevance apart from the character conformity as required by Rule 404(b),
appellant also objected to the testimony on the basis of Rule 403. The trial court conducted a hearing
and held that the complained-of testimony's probative value substantially outweighed any unfair
prejudice.

 Rule 403 provides:


Although relevant evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or by consideration of undue delay, or needless presentation of cumulative
evidence.



 Almost all evidence offered by the prosecution will be prejudicial to the defendant. 
Only evidence that is unfairly prejudicial should be excluded. Ford v. State, 26 S.W.3d 669, 675
(Tex. App.--Corpus Christi, 2000, no pet.); Caballero v. State, 919 S.W.2d 919, 922 (Tex.
App.--Houston [14th Dist.] 1996, pet. ref'd). Unfair evidence is that which has an undue tendency
to suggest that a decision be made on an improper basis, commonly an emotional one. Montgomery,
810 S.W.2d at 389; Caballero, 919 S.W.2d at 922. Rule 403 requires exclusion only if the danger
of unfair prejudice substantially outweighs the probative value of the evidence. There is a
presumption that relevant evidence will be more probative than prejudicial. Montgomery, 810
S.W.2d at 389; Blakeney, 911 S.W.2d at 515. So long as the trial court operates within the
boundaries of its discretion, there is no abuse of discretion, and its decision will not be disturbed on
appeal. McFarland v. State, 845 S.W.2d 827, 837 (Tex. Crim. App. 1992). However, if the record
reveals criteria reasonably conducive to a risk that the probative value of the tendered evidence is
substantially outweighed by unfair prejudice, then the trial court acted irrationally in admitting it and
abused its discretion. Rachal, 917 S.W.2d at 808 (citing Montgomery, 810 S.W.2d at 392).

 Under the circumstances, the inherent probativeness and inherent prejudice of the
third party extraneous offenses weigh in favor of exclusion. If the evidence was relevant at all, it had
only marginal probative value. By contrast, the danger of unfair prejudice from such extraneous
offenses and their details was substantial. "Both sexually related misconduct and misconduct
involving children are inherently inflammatory." Montgomery, 810 S.W.2d at 397. There was the
grave potential for a decision here on an improper basis as the jurors may have lost sight of the
specific issues framed by the indictment they were called upon to decide and convicted appellant out
of revulsion against his being a serial child molester of step-daughters, even though most of the
evidence was remote. Because all factors militate in favor of a finding that the probativeness of the
unadjudicated third party extraneous offense evidence was substantially outweighed by the danger
of unfair prejudice, we conclude the trial court abused its discretion in admitting the evidence.


Harmfulness of Error


 We now consider whether the trial court's error is reversible. Tex. R. App. P.
44.2(b). (8) The error here is not constitutional, so we must determine if it affects substantial rights. 
A substantial right is violated when the error made the subject of complaint had a substantial and
injurious effect or influence in determining the jury's verdict. King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750, 776 (1946)). The bulk of
the State's case-in-chief was composed of highly prejudicial extraneous offense testimony. More
time was spent developing the extraneous wrongdoing than proving the ultimate issues alleged in
the indictment resulting in greater likelihood of juror distraction from the main issues. Most of the
reasons given for the introduction of the extraneous offenses were inapplicable and the laundry list
of reasons given in limiting instructions could have only served to confuse the jury. We do not
harbor "grave doubts" (9) but have no doubt that the error was harmful as having a substantial and
injurious effect and influence in determining the jury's verdict. "Society wins not only when the
guilty are convicted but when criminal trials are fair; our system of the administration of justice
suffers when any accused is treated unfairly." Brady v. Maryland, 373 U.S. 83, 87 (1963).

 Appellant's point of error is sustained. The judgment is reversed and the cause
remanded.



 

 John F. Onion, Jr., Justice

Before Justices B. A. Smith, Puryear and Onion*

Reversed and Remanded

Filed: November 29, 2001

Publish









* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   Appellant's name in the record is spelled both "DeLeon" and "Deleon." The indictment
uses a bold-lettered capitalized "DELEON." We shall use "DeLeon."
2.   The current code is cited for convenience. Appellant was tried under Act of May 29, 1993,
73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3616 (Tex. Pen. Code § 21.11, since
amended, but unchanged as to subsection (a)(1)).
3.   The complainant was uncertain as to certain dates and time. Neither the State nor appellant
were able to elicit from her any certainty in this regard to a number of events.
4.    The State apparently intended to use only one witness because on voir dire examination 
the prospective jurors were asked if they could convict on the basis of one witness's testimony.
5.   This statute, applicable to the instant offense and certain other sexual offenses with a child
under seventeen years of age, provides in section 2:


Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence [now
see Texas Rules of Evidence], evidence of other crimes, wrongs, or acts
committed by the defendant against a child who is the victim of the alleged
offense shall be admitted for its bearing on relevant matters, including (1) the
state of mind of the defendant and the child; (2) the previous and subsequent
relationship between the defendant and the child.


Article 38.37, section 2 supersedes in certain sexual cases (including indecency with a child) the
application of Rules 404, 405, and even 402 of the Texas Rules of Evidence. See Conrad v. State,
10 S.W.3d 43, 46 (Tex. App.--Texarkana 1999, no pet.); Hinds v. State, 970 S.W.2d 33, 35 (Tex.
App.--Dallas 1998, no pet.); Howland v. State, 966 S.W.2d 98, 103 (Tex. App.--Houston [1st Dist.]
1998), aff'd on other grounds, 990 S.W.2d 274 (Tex. Crim. App. 1999).
6.   Only the complainant's testimony constituted evidence; the notice of intention, the voir dire
examination and opening statement were not.
7.   There is no defense of accident in the penal code. See Williams v. State, 630 S.W.2d 640,
644 (Tex. Crim. App. 1982); Garza v. State, 974 S.W.2d 251, 256 (Tex. App.--San Antonio 1998,
pet. ref'd); cf. Brown v. State, 955 S.W.2d 276, 279-80 (Tex. Crim. App. 1997). "Mistake of fact"
is a statutory defense. Tex. Pen. Code Ann. § 8.02 (West 1994). Likewise, "mistake of law" is a
statutory defense. Id. § 8.03 (West 1994). The trial court in its instructions did not distinguish
between the statutes.
8.   Rule 44.2(b) provides:



 Other Errors. Any other [non-constitutional] error, defect, irregularity, or
variance that does not affect substantial rights must be disregarded.
9.   See United States v. Lane, 474 U.S. 439, 449 (1986).